IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Scott O. Hall,                          )      Civil Action No. 8:13-2509-BHH-JDA
                                        )
                     Plaintiff,         )
                                        )
         vs.                            )      **REPORT AND RECOMMENDATION**
                                        )      **OF MAGISTRATE JUDGE**
Carolyn W. Colvin,                      )
Commissioner of Social Security,        )
                                        )
                     Defendant.         )

        This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claim for disability insurance benefits ("DIB").    For the reasons set forth below,  it is

recommended that the decision of the Commissioner be reversed and remanded for

administrative action consistent with this recommendation, pursuant to sentence four of 42

U.S.C. § 405(g).

## PROCEDURAL HISTORY

        On December 23, 2010, Plaintiff filed an application for DIB alleging an onset of

disability date of December 23, 2010.[2]  [R. 20.]  Plaintiff's claim was denied initially and on

reconsideration [R. 67–70, 65], by the Social Security Administration ("the Administration").

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

[2]Originally, Plaintiff alleged that May 13, 2008, was the onset date, but at the hearing
before the ALJ, Plaintiff amended the alleged onset date to December 23, 2010. [R. 39.]

Plaintiff requested a hearing before an administrative law judge ("ALJ"), and, on May 7, 2012, ALJ Sarah B. Stewart conducted a de novo hearing on Plaintiff's claims. [R. 35–62.]

The ALJ issued a decision on June 19, 2012, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 20–30.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through March 31, 2013, and had not engaged in substantial gainful activity since December 23, 2010, the amended alleged onset date. [R. 22, Findings 1 and 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: asthma, chronic obstructive pulmonary disease, gouty arthritis, anxiety, and depression. [R. 22, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of history of drug abuse, hypertension, GERD, umbilical hernia, and somatoform disorder. [R. 23.] During the RFC discussion, the ALJ mentioned that Plaintiff is impaired by obesity, which the ALJ described as severe obesity [R. 26] when discussing Plaintiff's respiratory ailments, but as mild obesity [R. 27] when discussing Plaintiff's lower extremity pain.[4] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 23–25, Finding 4.] The ALJ specifically considered Listings 3.02, 3.03, 14.09, 12.04, 12.06 and 12.07. [*Id.*]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

---

[3] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra.*

[4] Plaintiff raises no allegation of error with respect to the ALJ's treatment of Plaintiff's obesity, which is not even mentioned at Step 2.

2

> I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant has the sedentary work capacity to lift less than ten pounds occasionally and to sit for six of eight hours and walk or stand for two of eight hours. The claimant can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, can never balance, occasionally stoop, and never kneel, crouch or crawl. The claimant must avoid exposure to extreme cold and extreme heat, as well as fumes, odors, dusts, gases, poorly ventilated areas, and chemicals. The claimant is limited to simple, routine, and repetitive tasks in a work environment that is free of fast-paced work and that involves only simple work-related decisions, with few if any workplace changes.

[R. 25, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work as a machine operator, garbage collector, order puller, and tipper operator.  [R. 29, Finding 6.]  Considering the Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.  [R. 29, Finding 10.]  Accordingly, the ALJ found Plaintiff had not been under a disability, as defined in the Act, from December 23, 2010, through the date of the decision.  [R. 30, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review.  [R. 1-6.]  Plaintiff filed this action for judicial review on September 16, 2013.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and alleges the ALJ erred by

(1)    failing to appoint a medical expert specializing in pulmonary disease to consider whether Plaintiff meets Listing 3.02A for chronic pulmonary insufficiency due to discrepancies in the record regarding

3

Plaintiff's actual height and by failing to find that Plaintiff's pulmonary impairment met Listing 3.02A on March 24, 2011;

(2)     failing to state what weight was given to the opinion of Dr. Gordon Early ("Dr. Early") and rejecting portions of his opinion without explanation;

(3)     rejecting Plaintiff's credibility based on erroneous findings and improperly discrediting his testimony for his failing to obtain medical treatment without considering his explanation for the lack of treatment—financial constraints; and

(4)     failing to properly consider the side effects of Plaintiff's medications on his ability to work.

Plaintiff requests an outright reversal of the Commissioner's decision and an award of disability benefits, or, in the alternative, a remand of this case before a new ALJ.

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

(1)     properly determined that Plaintiff's impairments did not meet or equal any listed impairment;

(2)     properly evaluated Dr. Early's opinion;

(3)     adequately explained his assessment of Plaintiff's credibility and properly took into account Plaintiff's failure to seek regular treatment; and

(4)     adequately took into account Plaintiff's reports of "fatigue and drowsiness" as a result of his medications.

Accordingly, the Commissioner requests that the Court affirm the ALJ's decision.

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must

include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

5

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the

6

Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## **APPLICABLE LAW**

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden

shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A. *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B. *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not

10

fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.    *Other Work*

---

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).   When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.   20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).   A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is

unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making

14

the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V. Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds

15

that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be

16

expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*,

17

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Appointment of Medical Expert and Listing 3.02A**

Plaintiff challenges the ALJ's evaluation of his impairments in light of the criteria for Listing 3.02A.  Plaintiff argues that, due to discrepancies in the record regarding his height, and the fact that Plaintiff clearly suffers from debilitating breathing problems which may meet or equal a listed impairment, the ALJ committed reversible error by not appointing a medical expert specializing in pulmonary dysfunction to testify at the hearing.  [Doc. 20 at 11.]  Plaintiff contends that Plaintiff's height is critical in a pulmonary listing case because pulmonary function is based on a patient's height.[8] [*Id.* at 9–10.]  Plaintiff further contends that the ALJ erred by failing to find that Plaintiff's pulmonary impairment met Listing 3.02A on March 24, 2011.  [*Id.* at 11.]  However, the Commissioner contends that Plaintiff's argument ignores the fact that a single reading falling within the listing parameters was insufficient to meet the listing's requirements, and there is no indication regarding additional maneuvers that were performed.  [Doc. 22 at 5.] Additionally, the Commissioner argues

---

[8]Plaintiff explains that the record contains inconsistent records of his height: Plaintiff testified he is 5'10" (70") in height [R. 40]; Spartanburg Regional Medical Center found him to be 5'10 ½" (70 ½") in height [R. 331]; and, Dr. Early listed Plaintiff's height as 5'9" (69") [R. 407].  [*Id.* at 10.]

that the ambiguity regarding Plaintiff's height further precludes him from demonstrating that

he met the listing's requirements. [*Id.*]  The Court agrees with Plaintiff that the ALJ failed

to adequately explain her rationale for rejecting the applicability of Listing 3.02A.

### Criteria of Listing 3.02A

The criteria for meeting Listing 3.02[9] are as follows:

A.    Chronic obstructive pulmonary disease due to any cause, with the
$FEV_1$ equal to or less than the values specified in Table I
corresponding to the person's height without shoes. (In cases of
marked spinal deformity, see 3.00E.);

**Table 1**

| Height without Shoes (centimeters) | Height without Shoes (inches) | $FEV_1$ Equal to or less than (L, BTPS) |
|---|---|---|
| 154 or less | 60 or less | 1.05 |
| 155–160 | 61–63 | 1.15 |
| 161–165 | 64–65 | 1.25 |
| 166–170 | 66–67 | 1.35 |
| 171–175 | 68–69 | 1.45 |
| 176–180 | 70–71 | 1.55 |
| 181 or more | 72 or more | 1.65 |

With respect to results of spirometry that are used for adjudication under paragraphs A and

B of 3.02, "[t]he reported one-second forced expiratory volume ($FEV_1$) and forced vital

capacity (FVC) should represent the largest of at least three satisfactory forced expiratory

maneuvers.  Two of the satisfactory spirograms should be reproducible for both

pre-bronchodilator tests and, if indicated, post-bronchodilator tests." *See* 20 C.F.R. pt. 404,

---

[9] 20 C.F.R. pt. 404, Subpart P, App. 1 § 3.02.

19

subpt. P, app. 1, § 3.00E.  Pulmonary function studies performed to assess airflow

obstruction without testing after bronchodilators cannot be used to assess levels of

impairment in the range that prevents any gainful work activity, unless the use of

bronchodilators is contraindicated.  [*Id.*] Under this Listing, "The highest values of the $FEV_1$

and FVC, whether from the same or different tracings, should be used to assess the

severity of the respiratory impairment." [*Id.*]

### ALJ's Listing Analysis

In considering Listing 3.02, the ALJ explained his finding as follows:

> With respect to the claimant's lung disease, I reviewed
> Respiratory listings 3.02 (Chronic pulmonary insufficiency) and
> 3.03 (Asthma), and neither listing is satisfied. None of the
> pulmonary testing of record has shown listing-level values of
> respiratory compromise (5F/28; 11F), and the claimant has not
> presented for the listing-level number of asthma attacks, nor
> has he required inpatient hospitalization on a regular basis or
> been compliant with "prescribed treatment. "

[R. 23.]

### Discussion

To determine whether a claimant's impairments meet or equal a listed impairment,

the ALJ identifies the relevant listed impairments and compares the listing criteria with the

evidence of the claimant's symptoms.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir.

1986) (stating that without identifying the relevant listings and comparing the claimant's

symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial

evidence to support the determination"); *Gilbert v. Colvin*, C/A No. 8:13-1561-JFA-JDA,

2014 WL 4809923, at *12 (D.S.C. Sept. 26, 2014) (explaining that where there is "'ample

factual support in the record' for a particular listing, the ALJ must provide a full analysis to

determine whether the claimant's impairment meets or equals" it.) (citations omitted). While the ALJ may rely on the opinion of a State agency medical consultant in conducting a listing analysis, 20 C.F.R. § 404.1527(e)(2)(iii), the ALJ ultimately bears the responsibility for deciding whether a claimant's impairments meet or equal a listing.  *Id.* at § 404.1527(d)(2).  As stated above, the ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517. A consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability, but under the regulations, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

A review of the medical evidence shows that on March 24, 2011, Plaintiff presented to Spartanburg Regional Medical Center for a pulmonary functions test.  [R. 333.]  Plaintiff was diagnosed with asthma and was noted to have dyspnea after exertion, a productive cough, and frequent wheezing. [*Id.*]  Treatment notes indicate Plaintiff's COPD was likely worsened by exposure to tearing out walls and sheet rock while remodeling his home.  [R. 318.]  Plaintiff was listed as being 70.50 inches in height.  [R. 333]  Test results indicated that Plaintiff's FVC, $FEV_1$, $FEV_1$/FVC ratio and FEF25-75% were reduced, indicating airway obstruction.   [*Id.*]    Plaintiff's  $FEV_1$  value  pre-bronchodilator  was  1.48  and  post-

bronchodilator was 1.54. [R. 331.] These FEV$_1$ readings appear to be qualifying readings[10] on Table 1 of Listing 3.02A.

On April 17, 2011, Plaintiff presented to Dr. Early for a consultation to assess work fitness. [R. 406.] Dr. Early noted Plaintiff was obese at a height of 5'9" and 229 pounds. [R. 407.] He also performed a pulmonary function test finding his FEV$_1$ was 2.06 or 55% of normal. [*Id.*] This reading does not appear to be a qualifying reading on Table 1 of Listing 3.02A.

Plaintiff contends the ALJ was required to consult or appoint a pulmonary expert to determine whether Plaintiff met the Listing requirements in light of discrepancies in his recorded height. Based on a review of the ALJ's decision, the Court is not persuaded that the ALJ needed to appoint an expert; however, the Court does find that the ALJ failed to adequately explain her rationale for rejecting the applicability of Listing 3.02A in light of the above identified reading which appears to be qualifying under Table 1.

While the Commissioner contends that the listing is not met because a single reading is insufficient to meet the listing's requirement, and there is no indication that at least three satisfactory maneuvers were performed, the ALJ's decision does not reflect this reasoning for finding Plaintiff failed to meet Listing 3.02 criteria. *See Cassidy v. Colvin*, C/A No. 1:13-821-JFA-SVH, 2014 WL 1094379, at *7 n.4 (D.S.C. March 18, 2014) (explaining that it is impermissible for the Commissioner to rely on post hoc rationalizations not

_____

[10]The Court notes that there is no discussion by the ALJ regarding whether these results represent the largest of three satisfactory FEV$_1$ maneuvers and/or whether the failure to so represent at least three maneuvers was her basis for disregarding the readings which appear to be qualifying on Table 1 of Listing 3.02. [R. 23.] While the Commissioner raises this argument [Doc. 22 at 4–6], there is no indication in the ALJ's decision that this reasoning formed a basis for her rejection of these readings.

included in the ALJ's decision and citing *Golembiewski v. Barnhart,* 322 F.3d 912, 915–16 (7th Cir. 2003)).  Here, the ALJ concluded that "[n]one of the pulmonary testing of record has shown listing-level values of respiratory compromise" [R. 23], when at least one reading from March 24, 2011, appears to reflect listing-level values of respiratory compromise at Plaintiff's height of 70.5 inches. [R. 331.]  Curiously, the ALJ never mentioned the discrepancies in the record regarding Plaintiff's height, and, as Plaintiff points out, height is critical to a determination of whether Plaintiff's $FEV_1$ values meet the listing criteria outlined in Table 1.

At this level of review, it is not the Court's duty to determine which height ascribed to Plaintiff is accurate.  Additionally, it is not the Court's duty to decide whether the $FEV_1$ values listed represent the largest of three satisfactory maneuvers.  It is the ALJ's responsibility, not the Court's, to weigh the evidence and to resolve conflicts of evidence, *see Craig*, 76 F.3d at 589, and to fully and fairly develop the record and inquire fully into each relevant issue.  *See Cook*, 783 F.2d at 1173.  At a minimum, the ALJ should have explained why she reasoned the $FEV_1$ readings from March 24, 2011, while they appear to be qualifying, were not sufficient to meet the Listing 3.02 criteria.  The post hoc reasoning of the Commissioner does not cure the ALJ's failure to "rationally articulate the grounds for her decision" or to "build an accurate and logical bridge from the evidence to her conclusion."  *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citations omitted).

For the above-stated reasons, the Court cannot find the ALJ's determination with respect to Listing 3.02A is supported by substantial evidence.  On remand, the ALJ should clearly explain her consideration of the criteria for meeting Listing 3.02A.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly explain her consideration of Listing 3.02A criteria in light of the record evidence  is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, including the need to consult or appoint a pulmonary expert.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

**IT IS SO RECOMMENDED**.


s/Jacquelyn D. Austin
United States Magistrate Judge

January 6, 2015
Greenville, South Carolina

24